UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MATIAS REYES,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 1:12-cv-548

Honorable Joseph G. Scoville

**OPINION**

      This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On September 6, 2008, plaintiff filed his application for benefits alleging a November 15, 2005 onset of disability. (A.R. 132-34). Plaintiff's disability insured status expired on June 30, 2008. Thus, it was plaintiff's burden to submit evidence demonstrating that he was disabled on or before June 30, 2008. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

      Plaintiff's claim for DIB benefits was denied on initial review. (A.R. 80-90). On October 1, 2010, plaintiff received a hearing before an ALJ. (A.R. 31-75). On October 28, 2010, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 16-24). On February 24, 2012, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 15). Plaintiff argues that the Commissioner's decision should be overturned because the ALJ's factual findings regarding his credibility and residual functional capacity (RFC) were "legally erroneous," and the "ALJ's Step Five Conclusion [was] Not Supported by Substantial Evidence." (Plf. Brief at 11-13, docket # 21; Reply Brief, docket # 28). The Commissioner's decision will be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833

(6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on November 15, 2005, his alleged onset of disability, and continued to meet the requirements through June 30, 2008, but not thereafter. (A.R. 18). Plaintiff had not engaged in substantial gainful activity on or after November 15, 2005. (A.R. 18). Plaintiff had the following severe impairments: "insulin dependent diabetes mellitus, hypertension, diabetic peripheral neuropathy, mild diabetic retinopathy, obesity, asthma, [and] history of alcohol dependence with continuing use/abuse." (A.R. 18). The ALJ found that plaintiff did not have an impairment or

combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 19). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing, balancing, stooping, kneeling, crouching, and crawling and avoid concentrated exposure to hazards (machinery, heights, etc.).

(A.R. 20). The ALJ found that plaintiff's subjective complaints were not fully credible. (A.R. 20-23). Plaintiff was unable to perform his past relevant work. (A.R. 23). Plaintiff was 54-years-old as of his date last disability insured. Thus, at all times relevant to his claim for DIB benefits, plaintiff was classified as an individual closely approaching advanced age. (A.R. 23). He has at least a high school education and is able to communicate in English. (A.R. 23). The transferability of work skills was not material to a disability determination. (A.R. 23). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with his RFC, education, and work experience, the VE testified that there were 35,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 63-66). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled.[1] (A.R. 23-24).

---

[1] Plaintiff testified that he is an alcoholic and that he continues to consume alcohol. (A.R. 52-55). Alcohol abuse is documented throughout the administrative record. (*See e.g.*, A.R. 361, 479, 611, 844, 1056, 1067, 1232, 1242). Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to his disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be

**1.**

Plaintiff argues that the ALJ's credibility determination was "legally erroneous." (Plf. Brief at 9-11; Reply Brief at 1-4). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ found that plaintiff's testimony regarding his subjective functional

---

disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability. *See Gayheart v. Commissioner*, 710 F.3d at 380.

limitations was not fully credible. The ALJ's full analysis of the evidence is quite lengthy and will not be reproduced in its entirety herein. Among other things, the ALJ found that plaintiff's credibility was undermined by his persistent failure to follow prescribed medical treatment:

> Claimant alleges inability to work due to neuropathy in both legs that causes swelling and pain and low back pain. He can sit, stand, and walk for only short periods and feels he needs to lie down. He takes medication for this but he is getting immune to this. He has been dieting and now weighs about 220 pounds.
>
> Claimant testified that 12 years ago, he got divorced. He was working and getting drunk. He ended up in prison for driving under the influence. He has cut back since then. After careful consideration of the evidence, the undersigned finds that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The medical findings are not as severe as claimant describes. In January 2005, physical examination for drooping face showed no evidence of diabetic neuropathy (Ex 12F/36). The magnetic resonance imaging (MRI) and computed tomography (CT) of the brain showed no evidence of acute intracranial process. He could close his eyes. No change in vision reported. He was not drooling. He denied having headache and chest pain. The left sided facial droop had resolved. No left arm weakness reported. It was also noted that despite his history of hypertension, myocardial infarction (1998), diabetes, hypercholesterolemia, angioplasty after heart catheterization, he continues to smoke a half a pack a day (Ex 32F/12/13, 7F/8).
>
> * * *
>
> Prior to claimant's May 2008 esophagogastroduodenoscopy and colonoscopy, it was determined that claimant has decision-making capacity. He admitted he was drinking 18 beers a day.
>
> * * *
>
> He has shortness of breath and history of smoking. He denies chest pain. He was prescribed inhaler with albuterol only to use as needed. He has been advised against smoking, but he said he is not interested in quitting and does not want any help.
>
> * * *

> Regarding claimant's type II diabetes, insulin dependent; "Patient is noted to be mixing Novolin N. and insulin into one syringe." However, he was advised not to do so. He was told to discontinue Metformin because he has significant alcohol use. He was advised to go to diabetic clinic but he decided not to do so. Claimant continues to smoke one-half package of cigarettes a day despite his cough.
>
> * * *
>
> Claimant refuses to quit drinking despite advisement of risks, especially with medication interaction. Help to stop drinking was offered but he declined (Ex 14F/31/32/33, 19F, 23F).
>
> * * *
>
> There have been no hospitalizations for diabetes related issues. Claimant has not reduced food portion size. Claimant is 90 pounds overweight. He reported restriction of activities because of generalized weakness and pains in the feet from diabetes mellitus. "He quit working in October 2008 because of workforce reduction." Otherwise, he was able to work part-time up to that point.
>
> * * *
>
> Claimant's medication list is significant for multiple health problems, but that is all the treatment required for his conditions. He has regular checkups and goes in for occasional tests, but he does not need emergent care or surgeries with extensive tests and therapies. Physicians note that his blood sugars are not controlled but claimant's significant amounts of alcohol is likely related to that (Ex 14F/15/21/29/30).
>
> * * *
>
> Indeed, claimant's impairments have required only the most conservative treatment and he has not been fully compliant with treatment. He has been offered additional help and for overall health improvement but refused the offers. He has been advised of consequences of noncompliance with medical treatments but states he does not care. Claimant does not offer an explanation for not following medical treatment. He has capacity for decision-making (Ex 14F). The undersigned finds that claimant has capacity to perform a reduced range of light work as indicated by State agency physician in Exhibit 24F. The undersigned concludes that claimant's complaints are not as severe and debilitating as alleged through his date last insured of June 30, 2008.

(A.R. 20-23). It was appropriate for the ALJ to consider plaintiff's failure to follow prescribed treatment. The Social Security regulations make pellucid that the claimant bears the burden of

demonstrating "good reason" for his failure to follow prescribed treatment: "If you do not follow the prescribed treatment without good reason,[2] we will not find you disabled." 20 C.F.R. § 404.1530(b). The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. *See Sias*, 861 F.2d at 479-80. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ credibility finding is supported by overwhelming evidence, and the ALJ gave a more than adequate explanation why he found that plaintiff's testimony was not fully credible. *See Rogers v. Commissioner*, 486 F.3d 234, 247-49 (6th Cir. 2007).

**2.**

Plaintiff argues that the ALJ's factual finding regarding his RFC was legally erroneous. (Plf. Brief at 11-12; Reply Brief at 4-5). RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a); *see Kornecky v. Commissioner*, 167 F. App'x 496, 499 (6th Cir. 2006). RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2); *see Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). "In formulating a residual functional capacity, the ALJ evaluates all the relevant medical and other

---

[2]Plaintiff did not provide good reasons for his failure to do what was medically necessary. In *Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988), the Sixth Circuit emphasized that the Social Security Act did not repeal the principle of individual responsibility: "The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself into an early grave, that is his privilege -- but if he is not truly disabled, he has no right to require those who pay social security taxes to underwrite the cost of his ride."

evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Commissioner*, 476 F. App'x 618, 621 (6th Cir. 2012).

Plaintiff argues that the ALJ's factual finding failed to adequately take into account his limitations on standing and walking stemming from his diabetic neuropathy and obesity. The ALJ gave a more than sufficient explanation why he found that plaintiff's testimony regarding these limitations was not fully credible. No physician who treated plaintiff during the disability insured period at issue suggested he could not perform the standing and walking requirements of light work.

Plaintiff's argument that the Commissioner's decision should be overturned because the ALJ's RFC finding did not include a restriction against exposure to pulmonary irritants strains credulity. During the entire period at issue, November 15, 2005, through June 30, 2008, plaintiff continued to smoke cigarettes against medical advice.[3] (*See* A.R. 479, 646, 745, 798, 854, 1008-09, 1116, 1118, 1143, 1197, 1259, 1270). Plaintiff's medical care providers repeatedly told him to stop smoking. The following is a representative sample: "As your clinician, I want you to know that quitting tobacco/smoking is the MOST important thing you can do to protect your health. Are you ready to quit? NO." (A.R. 1116). Plaintiff testified that exposure to cold "bother[ed his] breathing," but he did not claim any sensitivity to pulmonary irritants. (A.R. 60).

On April 3, 2008, Shireen Haque, M.D., made the following observations regarding plaintiff's complaints of shortness of breath:

> Shortness of breath, with history of smoking. Patient denies any chest pain. EKG was ordered, which is normal. Patient was prescribed Combivent inhaler along with albuterol only to use as needed. Spirometry is requested. Patient was advised against smoking. He is not interested to quit and does not want any help. [] [P]atient has had prior chest x-ray [in]

---

[3]The record shows that plaintiff consistently disregarded medical advice, before, during, and after the disability insured period at issue.

Ohio that showed a lower lobe nodule followed by a CAT scan, which did not reveal any abnormality.

(A.R. 1242). The ALJ noted that plaintiff had an Albuterol inhaler for use "as needed." (A.R. 21). He also noted that plaintiff "was scheduled for a pulmonary function consultation and test on May 30, 2008, but he was a no-show." (A.R. 21). On January 5, 2009, a State Agency medical consultant, William Jackson, M.D., reviewed plaintiff's medical records, and offered his opinion that plaintiff's impairments did not require any environmental limitations other than a restriction regarding hazards and machinery.[4] (A.R. 1539). The ALJ incorporated the environmental limitation suggested by Dr. Jackson into his factual finding regarding plaintiff's RFC. The court finds that the ALJ's factual finding that plaintiff retained the RFC to perform a limited range of light work is supported by more than substantial evidence.

**3.**

Plaintiff argues that the ALJ's step-5 decision is not supported by substantial evidence.[5] (Plf. Brief at 12-13; Reply Brief at 5). He argues that the ALJ's use of Grid Rule 202.15

---

[4]Plaintiff emphasizes that Dr. Jackson used an incorrect date as plaintiff's date last disability insured. (Plf. Brief at 11). This does nothing to undermine the ALJ's decision. Plaintiff has not shown any significant deterioration in his condition between December 31, 2007, the incorrect date used by Dr. Jackson (A.R. 1535), and June 30, 2008, the date plaintiff's disability insured status expired.

[5]"Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then

as a framework was error because Rule 202.15 requires a finding of transferable job skills and the ALJ did not make adequate findings regarding the transferability of his skill in using a micrometer. The ALJ found that the transferability of job skills was "not an issue" in this case:

> The vocational expert testified that claimant's past relevant work as [a] grinder was skilled, which indicates a (SVP) code of 5-10, and required the following skills: micrometer use. However, in consideration of the claimant's age, vocational adjustment, tools, and work processes, transferability is not an issue in this case.

(A.R. 23). Plaintiff is correct that Rule 202.15 requires transferable skills. However, the ALJ's citation error was utterly harmless. Rule 202.14 applies in instances where job skills are not transferable. When Rule 202.14 is used as a framework, it would likewise support a finding that plaintiff was not disabled.

Plaintiff argues without benefit of any supporting legal authority (1) that the VE's testimony does not provide substantial evidence supporting the ALJ's decision because the majority of the jobs he identified were unskilled, and (2) that the ALJ "failed to provide a well-reasoned rationale for refusing to apply the higher Grid age category to Plaintiff." (Plf. Brief at 12-13). Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012).

Even assuming that plaintiff did not waive these issues, they are meritless. The VE testified that a hypothetical individual of plaintiff's age with his RFC, education, and work experience would be capable of performing 35,000 jobs in Michigan (5,000 inspection and 30,000 manufacturing). (A.R. 63-64). The ALJ was not required to identify "skilled" jobs that plaintiff was

---

other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

capable of performing. The 35,000 jobs identified by the VE constitute a significant number of jobs. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 is a significant number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 is a significant number); *Martin v. Commissioner*, 170 F. App'x 369, 375 (6th Cir. 2006) (870 jobs is a significant number); *see also Nejat v. Commissioner*, 359 F. App'x 574, 579 (6th Cir. 2009) (collecting cases holding that as few as 500 jobs constituted a significant number). It is well settled that a VE's opinion, given in response to an accurate hypothetical, is sufficient to satisfy the substantial evidence test.

Plaintiff's argument that the ALJ failed to justify his decision not to apply a higher Grid age category to plaintiff's claim is meritless. Section 404.1563(b) states that the age categories will not be mechanically applied in a borderline situation:

> (b) How we apply the age categories. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). "Nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination." *Bowie v. Commissioner*, 539 F.3d 395, 399 (6th Cir. 2008). Plaintiff was not "within a few days" of reaching an older age category. His disability insured status expired on June 30, 2008. He did not reach the category of a person of advanced age under 20 C.F.R. § 404.1563(e) until more than six months after his disability insured status expired. Six months is more than "a few months." *See Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012) (collecting cases).

"The fact that age categories are not to be applied mechanically, [ ] obviously does not mean that a claimant must be moved mechanically to the next age category whenever h[is] chronological age is close to that category." *Van der Maas v. Commissioner,* 198 F. App'x. 521, 528 (6th Cir. 2006); *see Caudill v. Commissioner*, 424 F. App'x 510, 516-18 (6th Cir. 2011). The court finds no error.

## **Conclusion**

For the reasons set forth herein, a judgment will be entered affirming the Commissioner's decision.

Dated: September 27, 2013          /s/ Joseph G. Scoville
                                   United States Magistrate Judge